UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

---

JAMIE OWENS
1028 Kretsch Court
Kiel, WI 53042

    Plaintiff,

    v.                       Case No: 15-CV-0424

OLD WISCONSIN SAUSAGE        **JURY TRIAL DEMANDED**
COMPANY, INC.
2107 South 17th Street
Sheboygan, WI 53081

    Defendant.

---

## COMPLAINT

---

COMES NOW the Plaintiff, Jamie Owens, by her counsel, HEINS & MINKO LLC, by Attorneys Janet L. Heins and Nicholas J. DeStefanis, as and for a claim against the Defendant, alleges and shows to the court as follows:

    1.    This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as this case involves a federal question under 42 U.S.C. § 2000e *et seq.*, and 28 U.S.C. § 1343, as this case involves an Act of Congress providing for the protection of civil rights.

    2.    The unlawful employment practices of which Plaintiff complains occurred within Sheboygan County in the Eastern District of Wisconsin, and therefore, venue is proper in this District pursuant to 42 U.S.C. § 2000e-5(f)(3).

    3.    The Plaintiff, Jamie Owens, is an adult resident of the State of Wisconsin residing in Manitowoc County with a post office address of 1028 Kretsch Court, Kiel, Wisconsin 53042.

4. Defendant, Old Wisconsin Sausage Company, Inc., was, at all times material herein, a domestic corporation doing business in the course of interstate commerce in the State of Wisconsin with its principal office located at 2017 South 17th Street, Sheboygan, Wisconsin 53081.

5. Defendant hired Plaintiff as its Human Resources Department Manager in June 2011.

6. As Human Resources Department Manager, Plaintiff was responsible for, *inter alia*, compliance with State and Federal laws, recruitment, employee relations, benefits administration, headcount reporting for staffing, safety and worker's compensation reporting, training and development of employees and supervisors, FMLA administration, disciplinary actions and terminations, managing the retail store, scheduling, compensation for new hires, preparing performance reviews for supervisors, inputting wage and bonus information, identifying issues with employees and supervisors, and compliance with policies and procedures in the employee handbook.

7. Of the ten department managers at Defendant at all times material herein, Plaintiff was the only female department manager.

8. Plaintiff was the lowest paid department manager at Defendant, despite the fact that she had more credentials and advanced degrees than the male department managers.

9. Plaintiff was the only department manager at Defendant with a Master's Degree and she had her federal certification as a professional in human resources plus eight years of outside management experience, prior to coming to work for Defendant.

10. At all times material herein, Plaintiff was classified as a "Manager I," which gave

her a bonus potential of 10%. All of the male department managers at Defendant were immediately classified as a "Manager II," which provided them with a bonus potential of 15%.

11. During her training with Jeff Thiel, the departing Human Resources Department Manager, Plaintiff was essentially told that one of the reasons she was hired was because she was female and they wanted her to help change the male dominated "boys club" environment at Defendant.

12. Defendant's male-dominated culture permeated throughout the organization. For instance, when an employee received a performance based bonus, it was referred to as an "Atta boy" bonus.

13. Because of her job duties, Plaintiff knew the qualifications and pay scale of other supervisors. At all times material herein, Defendant had ten supervisors and nine assistant supervisors just below the department manager level. Of those positions, only two were filled by females.

14. Plaintiff knows that female supervisors are paid less than their male counterparts at Defendant, despite having superior or equal credentials and qualifications for the position.

15. At all times material herein, Plaintiff performed my job duties satisfactorily, which resulted in her receiving a bonus in November 2011.

16. In her offer letter from Defendant, Plaintiff was promised a formal performance review within six months of commencing her employment; however, she was never given a formal performance review despite her request for one.

17. In or around July 2011 and October 2011, Plaintiff informed Steve Harrison, General Manager of Defendant, that the company was not properly paying overtime rates for

3

non-exempt employees who worked more than 40 hours in a workweek, a violation of the Fair Labor Standards Act ("FLSA").

18. Nothing was done to correct the unpaid overtime issue after Plaintiff reported this problem to Defendant. On information and belief, to this day Defendant is still in violation of the FLSA.

19. In or around April 2012, Plaintiff informed Chuck Pfrang, Defendant's Plant Manager and Dave Bollwahn, Defendant's Maintenance Manager, that Defendant was not properly reporting environmental issues to the United States Environmental Protection Agency ("EPA").

20. Nothing was done to correct the EPA issue after Plaintiff reported this problem. On information and belief, to this day Defendant is still in violation of the EPA.

21. On numerous occasions, Plaintiff informed all department managers at daily meetings that Defendant was in violation of one or more safety regulations governed by the Occupational Safety and Health Administration ("OSHA") and that OSHA-mandated trainings should be completed. Plaintiff made attempts to schedule these required trainings and she was ignored because of "production needs." Plaintiff explained that OSHA requires training and she received no cooperation to complete training from Defendant.

22. Nothing was done to correct the OSHA issue(s) after Plaintiff reported this problem. On information and belief, to this day Defendant is still violating numerous OSHA regulations.

23. In December 2011, Harrison and Pfrang met with Plaintiff and began interrogating her about an employee (Matt Kobussen) whom she had hired for Defendant. They

4

accused Plaintiff of maintaining an inappropriate relationship with Kobussen because they had previously dated.

24. Plaintiff told Harrison and Pfrang that she was not involved with Kobussen and that she felt it was sexual harassment to continue to accuse her and pry into her personal life that occurred before her tenure with Defendant.

25. In addition to feeling harassed, Plaintiff felt that Harrison and Pfrang were treating her differently than male supervisors because Defendant had no anti-fraternization policy and she was aware of at least one male department manager and one male supervisor who were involved in personal relationships with co-workers and/or subordinates.

26. In this meeting December 2011 meeting, immediately after Plaintiff informed Harrison and Pfrang that she felt she was being sexually harassed, Harrison stated that the level of her experience and skill sets were not as she had stated during her interview. No specific problems were identified by Harrison; however, Harrison said he would provide Plaintiff specifics when he gave her a performance review within one week's time. Harrison never provided Plaintiff with a performance review.

27. Plaintiff was so stressed and emotionally affected by this December 2011 meeting that she became ill and missed the next two days of scheduled work. Plaintiff informed Pfrang that she had missed these two days because he and Harrison had put her under a lot of stress.

28. Plaintiff requested a formal performance review in December 2011 but never received one.

29. Plaintiff had received a bonus in November 2011, just one month before Harrison's comments about her supposed performance "deficiencies."

5

Case 1:15-cv-00424-WCG   Filed 04/10/15   Page 5 of 8   Document 1

30. Plaintiff was treated differently than other male department managers in the conditions of her employment. For instance, male department managers were provided email access on their data plans and were reimbursed at a higher expense rate on their phones than was the Plaintiff. She was provided a lower reimbursement rate and data plan despite the fact that she needed to respond to work e-mails on her phone frequently.

31. In or around February 2012, all of Defendant's other department managers and supervisors left for the day at or around 1:00 p.m. without permission and without reprisal. However, Plaintiff was sent a warning by Pfrang because she left at 3:45 that day. Pfrang gave Plaintiff this warning despite the fact that she had already worked 10 hours that day and had no set schedule of work hours.

32. Plaintiff was terminated by Defendant on or about April 13, 2012.

33. Plaintiff's termination memo twice refers to the fact that she questioned business practices at the Defendant.

34. On June 1, 2012, Plaintiff filed a sex discrimination complaint against Defendant with the Wisconsin Equal Rights Division ("ERD"), designated as ERD Case No. CR201201708, and cross-filed with the U.S. Equal Employment Opportunity Commission ("EEOC") as EEOC Case No. 26G201201016C.

35. Plaintiff has exhausted all of her administrative remedies and has satisfied all conditions precedent to bringing this action.

## FIRST CLAIM FOR RELIEF - SEX DISCRIMINATION

36. Plaintiff realleges and incorporated paragraphs 1-35 of this complaint by reference.

37. Defendant intentionally discriminated against Plaintiff by subjecting her to sexual harassment, terminating her for not complying with her supervisor's sexual demands, and terminating her on the basis of her sex in reckless disregard of her federally protected rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2.

38. As a result of Defendant's intentional discrimination, Plaintiff has suffered damages in the form of pain and suffering, emotional distress, attorneys' fees and costs, and loss of wages and other employment benefits.

## SECOND CLAIM FOR RELIEF – TITLE VII RETALIATION

39. Plaintiff realleges and incorporated paragraphs 1-38 of this complaint by reference.

40. Defendant intentionally discriminated against Plaintiff by subjecting her to sexual harassment, terminating her for not complying with her supervisor's sexual demands, and terminating her on the basis of her sex in reckless disregard of her federally protected rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2.

41. As a result of Defendant's intentional discrimination, Plaintiff has suffered damages in the form of pain and suffering, emotional distress, attorneys' fees and costs, and loss of wages and other employment benefits.

## THIRD CLAIM FOR RELIEF – FLSA RETALIATION

42. Plaintiff realleges and incorporated paragraphs 1-41 of this complaint by reference.

43. Defendant violated the FLSA anti-retaliation provisions at 29 U.S.C. § 215(a)(3), as Defendant discharged Plaintiff because she filed any complaint under or related to 29 U.S.C. § 206-

207 and/or other FLSA requirements.

44. As a result of Defendant's intentional discrimination, Plaintiff has suffered damages in the form of pain and suffering, emotional distress, attorneys' fees and costs, and loss of wages and other employment benefits.

WHEREFORE, Plaintiff respectfully requests that this Court:

1. Order Defendant to make Plaintiff whole by providing appropriate back pay, front pay and/or reinstatement, compensatory damages, punitive damages, liquidated damages, pre-judgment and post-judgment interest, and reimbursement for other benefits and expenses in an amount to be shown at trial;

2. Grant to Plaintiff her attorney fees, costs and disbursements as provided by 42 U.S.C. § 2000e-5(k), and all other applicable statutes and provisions; and

3. Grant to Plaintiff whatever other relief this Court deems just and equitable.

**PLAINTIFF DEMANDS A JURY OF TWELVE AS TO ALL TRIABLE ISSUES.**

Dated this 10th day of April, 2015.

> HEINS & MINKO LLC
> Counsel for the Plaintiff
>
> ___*s/ Janet L. Heins*_____.
> Janet L. Heins, WI Bar No. 1000677

HEINS & MINKO LLC
1001 West Glen Oaks Lane, Suite 101
Mequon, Wisconsin 53092
(262) 241-8444 voice
(262) 241-8455 facsimile
e-mail: jheins@heinslawoffice.com